UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SELF-INSURANCE INSTITUTE OF AMERICA, INC.,

    Plaintiff,

v.

RICK SYNDER, in his official capacity as Governor of the State of Michigan; R. KEVIN CLINTON, in his official capacity as Director of the Office of Financial and Insurance Regulation of the State of Michigan; and ANDREW DILLON, in his official capacity as Treasurer of the State of Michigan,

    Defendants.

Case No.
Hon.
Mag. Judge

---

| STEPHEN F. WASINGER PLC | EGGERTSEN CONSULTING  PC |
|---|---|
| Counsel for Plaintiff | Co-Counsel For Plaintiff |
| Stephen Wasinger (P25963) | John H. Eggertsen (P25659) |
| 100 Beacon Centre | 2001 Commonwealth  Blvd, Suite 300 |
| 26862 Woodward Avenue | Ann Arbor, , MI 48105 |
| Royal Oak, MI 48067 | (734) 794-7100 |
| Tel:  (248) 544-7097 | john@jhelaw.com |
| sfw@sfwlaw.com | |

---

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

    Plaintiff SELF-INSURANCE INSTITUTE OF AMERICA, INC. ("SIIA") files this complaint for a declaration that Michigan's Health Insurance Claims Assessment Act, Public Act 142 of 2011 (the "Act") is preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and violates the Supremacy Clause of the United States Constitution.  SIIA also seeks an injunction against implementation and enforcement of the Act.

## PRELIMINARY STATEMENT

1. The State of Michigan enacted the Health Insurance Claims Assessment Act, Public Act 142 of 2011 (the "Act"), which becomes effective on January 1, 2012. (A copy of the Act is attached as Exhibit A.) The Act creates a new 1% medical claims assessment imposed upon "Carriers" who pay claims for medical services to a Michigan resident in Michigan. The Act defines "Carriers" to include employers who sponsor and administer group health plans under the Employee Retirement Income Security Act of 1974 ("ERISA") and their third party administrators ("TPAs"). The Act also imposes significant administrative burdens on Carriers and TPAs, including reporting and record-keeping burdens which conflict with ERISA's own reporting and record-keeping burdens.

2. The Act vests the Commissioner of the Office Of Financial And Insurance Regulation ("OFIR") with authority to enforce the law's provisions, including broad authority to adopt regulations to implement and regulate compliance with the Act.

3. The Michigan Department of Treasury has responsibility for collecting assessments due under the Act.

4. The Act is an unlawful intrusion on the comprehensive federal framework for the administration and regulation of employee benefit plans and, accordingly, is preempted by ERISA § 514, 29 U.S.C. § 1144.

5. SIIA is a trade association representing companies which sponsor and administer self-funded ERISA welfare plans, including plan sponsors, plan administrators and TPAs who function as fiduciaries within the meaning of ERISA § 3(21). The Act expressly regulates these ERISA fiduciaries.

6. SIIA seeks a declaration that the Act is preempted by ERISA and an injunction to prevent implementation or enforcement of the Act.

## PARTIES

7. SIIA is a non-profit trade association. SIIA brings this action on behalf of, and to vindicate the interests of, its members, who are directly and adversely affected by the Act.

8. Defendant Rick Snyder is the Governor of the State of Michigan. Snyder is vested by the Michigan Constitution with the executive power of the State of Michigan, including the power to supervise each of the principal departments of the executive branch of the State government. Mich. Const., art. V, §§ 1, 8. Governor Snyder is sued in his official capacity.

9. Defendant R. Kevin Clinton is OFIR's duly appointed Director. OFIR is the governmental agency charged with the administration of Act. As the state official with ultimate responsibility for administering the Act, Clinton is sued in his official capacity.

10. Defendant Andy Dillon is the Treasurer of the State of Michigan. Dillon has ultimate supervision of the Department of Treasury, which has responsibility for collecting assessments due under the Act. Dillon is sued in his official capacity.

11. The relief requested in this action is sought against Defendants, as well as against any subordinate officers, employees, agents, and other persons acting in cooperation with Clinton and under his supervision, at his direction, or under his control.

## JURISDICTION AND VENUE

12. This court has jurisdiction pursuant to ERISA § 502, 29 U.S.C. § 1132, which grants those SIIA members, who function as ERISA fiduciaries, including plan administrators and TPAs, the right to commence suits to enjoin any act or practice which violates any provision of ERISA. This court also has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2201 because this case presents a federal question arising under ERISA and the United States Constitution.

13. There is a present and actual controversy between the parties.

14. Venue is properly vested in this Court pursuant to ERISA § 502(e), 29 U.S.C. § 1132(e), and 28 U.S.C. § 1391.

## STANDING

15. SIIA seeks a judgment declaring that the Act is preempted by ERISA and in injunction against enforcement of the Act.

16. SIIA has standing to bring this action because:

a) SIIA's members would otherwise have standing to sue in their own right, including standing to bring actions under ERISA § 502 and to sue for a judgment pursuant to 28 U.S.C. § 2002 declaring that the Act is preempted by ERISA and violates the Supremacy Clause of the United States Constitution;

b) the interests SIIA seeks to protect are germane to SIIA's purpose; and

c) neither the claims asserted nor the relief requested requires the participation of individual members in the lawsuit.

*See, e.g., Self-Insurance Institute of America v. Korioth*, 993 F.2d 479, 484-85 (5th Cir. 1993); *Self-Insurance Institute of America v. Gallagher*, 1989 U.S. Dist. LEXIS 13942 (N.D. Fla. June 2, 1989), *aff'd without opinion*, 909 F.2d 1491 (11th Cir. 1990); *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

## FACTUAL BACKGROUND

17. The Act creates a new 1% medical claims assessment, effective January 1, 2012, imposed upon "Carriers" who pay claims for medical services to a Michigan resident in Michigan. The Act defines "Carriers" to include Employers, Union Trusts and third party administrators ("TPAs").

18. The Act also imposes significant administrative burdens on Carriers and TPAs, including reporting and record keeping burdens.

19. By its express terms, the Act applies to any Employer sponsoring a group health plan ("Plan Sponsor") or any TPA working for a group health plan if the plan pays claims for medical services rendered to a Michigan resident in Michigan, whether or not the Plan Sponsor, TPA or group health plan is located in Michigan.

20. SIIA's members include employers, plan sponsors, plan administrators and third party administrators who will be assessed and regulated by the Act, including members who function as ERISA fiduciaries with respect to the processing and payment of medical claims.

21. The Act expressly applies to "**every** carrier and third party administrator" which pays a "claim" on behalf of a Michigan resident for services provided to that resident in Michigan.  Sections 3(1) and 4(1) (emphasis added).

22. A "carrier" is defined not only to include insurers "regulated under the insurance code of 1956," HMOs and similar entities but also sponsors of a "group health plan."  The term "sponsor" is defined to include a single employer, multiple employers and union trust funds. Section 2(a).

23. A "group health plan" is defined to mean "an employee welfare benefit plan as defined in section 3(1) of subtitle A of title I of the employee retirement income security act of 1974, Public Law 93-406, 29 USC 1002, to the extent that the plan provides medical care, including items and services paid for as medical care to employees or their dependents as defined under the terms of the plan directly or through insurance, reimbursement, or otherwise."  Section 2(h).

24. A TPA is defined to mean "an entity that processes claims under a service contract and that may also provide 1 or more other administrative services under a service contract."  Section 2(v).  Note that this definition is not limited to TPAs licensed by the Michigan Insurance Department or even doing business in Michigan.

25. Section 3 of the Act levies, and mandates collection of, an assessment of 1% on a carrier's or third party administrator's "paid claims."

26. The term "paid claims" is broadly defined to include "actual payments, net of recoveries, made to a health and medical services provider or reimbursed to an individual by a carrier, third party administrator, or excess loss or stop loss carrier," but not including claims-related expenses and certain other expenses.   Section 2(s).

27. Section 3(3) of the Act exempts a plan sponsor from payment of the assessment if the assessment on that claim has been paid by a TPA or excess loss or stop loss insurer. Section 3(3) makes the TPA primarily liable for the payment of the assessment on claims except for claims reimbursed by a stop-loss carrier, in which case the stop-loss carrier shall be responsible for the assessment.

28. To ensure compliance, the Act creates administrative obligations on sponsors of group health plans and TPAs, including:

   a) Carriers and TPAs "shall develop and implement a methodology by which it will collect the assessment levied under this act from an individual, employer, or group health plan." Carriers have the additional duty to notify the Insurance Commissioner about the methodology to be used. Section 3a(2). The methodology is subject to several criteria, including:

   1) it must be applied uniformly within a line of business,

   2) it cannot use the health status or claims experience of an individual or group as an element or factor of the methodology,

   3) the amount collected from plan sponsors or individuals with uninsured or self-funded coverage must be determined as a percentage of actual paid claims, and

   4) the amount collected must reflect only the assessment levied and not include amounts such as related administrative expenses.

   b) Carriers and TPAs with paid claims subject to the assessment shall file a quarterly return for the preceding calendar quarter, "in a form prescribed by the department, showing all information that the department considers necessary for the proper administration of this act." Section 4(1).

c) Carriers and TPAs liable for an assessment "shall keep accurate and complete records and pertinent documents as required by the department" which records must be retained for 4 years after the assessment is due.  Section 5(1).

d) Carriers and TPAs can be required to make a return, render under oath certain statements, or keep certain records the department considers sufficient to show whether that person is liable for the assessment under the act.  Section 5(2).

e) If the Insurance Department determines that a Carrier or TPA has failed to pay an assessment or comply with the Act, the Insurance Commissioner may suspend or revoke their authority or license to operate in Michigan.  Section 10.

## COUNT I:
## DECLARATION THAT DEFENDANT HAS WRONGFULLY REFUSED TO PAY AND PROCESS SIIA'S MEMBERS'S CLAIMS

29. SIIA realleges Paragraphs 1 through 28.

30. ERISA was enacted to eliminate patchwork interstate treatment of employee benefits by establishing a uniform national framework for sponsoring, administering, protecting, and regulating employee benefit plans.  One of its main goals was to eliminate inconsistent state or local regulation of employee benefit plans.

31. To foster uniform national standards and administration, Congress structured ERISA with a broad preemption clause expressly superseding all state and local laws that "relate to" the administration of employee benefit plans.  *See* ERISA § 514, 29 U.S.C. § 1144.

32. The Supremacy Clause of the United States Constitution separately and independently preempts state laws that conflict with ERISA or operate to frustrate its objectives within the field of employee benefit plan regulation.

33. The Act conflicts with ERISA's carefully-constructed federal framework and is expressly preempted by ERISA § 514(a) because it "relates to" ERISA-covered plans.  The Act expressly references ERISA health plans, and it also has an impermissible connection with ERISA

health plans.

34. The Act also conflicts with and is preempted by ERISA because it impermissibly interferes with the uniform national administration of ERISA plans and contains record-keeping and reporting provisions which conflict with ERISA.

35. Because the Act is preempted by ERISA, it violates the Supremacy Clause of the United States Constitution.

36. SIIA is entitled to a declaratory judgment that, as directly or indirectly applied to self-funded ERISA funds, their plan sponsors, plan administrators, TPAs and agents, the Act is unconstitutional under the Supremacy Clause of the United States Constitution.

37. SIIA is also entitled to an injunction prohibiting Defendants from directly or indirectly enforcing the Act against, or collecting assessments under the Act from, self-funded ERISA funds, their plan sponsors, plan administrators, TPAs and agents.

38. The Act will cause irreparable injury for which there is no adequate remedy at law because, by way of example and not limitation:

a) the Act requires self-funded ERISA plans to ensure compliance with a regulatory scheme inconsistent with and preempted by ERISA;

b) the Act creates state interference with the structure and administration of self-funded ERISA plans; and

c) the Act subjects SIIA's members to recordkeeping, inspection, audit, and local enforcement on terms inconsistent with and preempted by ERISA's exclusive civil enforcement mechanism; and immediately increases the obligations and costs of SIIA's members who sponsor or administer self-funded ERISA plans.

39. These injuries cannot adequately be compensated by money damages and cannot be corrected retrospectively.

40. SIIA's members have no adequate remedy at law to prevent implementation or

enforcement of the Act.

41.     SIIA's members have a clear right to the relief sought.

WHEREFORE, SIIA prays that this Court:

A.     Declare that the Act is preempted by ERISA, violates the Supremacy Clause of the United States Constitution, and is void;

B.     Enter an order preliminarily and permanently enjoining Defendants, their successors in office, their agents, employees, and all persons acting in concert with them, from giving effect to the Act, including implementing and enforcing its requirements;

C.     Retain jurisdiction of this action to ensure compliance with the Court's decree;

D.     Award SIIA its costs and attorneys' fees;

E.     Grant any other appropriate relief.

                STEPHEN F. WASINGER PLC
                Counsel for Plaintiff

                By:     /s/ Stephen Wasinger
                      Stephen Wasinger (P25963)
                202 Beacon Centre
                26862 Woodward Avenue
                Royal Oak, MI 48067
                Tel: (248) 544-7097
                Fax: (248) 479-0391
                sfw@sfwlaw.com

                EGGERTSEN CONSULTING PC
                Co-Counsel For Plaintiff
                John H. Eggertsen (P25659)
                2001 Commonwealth Blvd.
                Suite 300
                Ann Arbor, MI
                (734) 794-7100
                john@jhelaw.com

Dated: December 22, 2011
KH112467