UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SELF-INSURANCE INSTITUTE OF AMERICA, INC.,

Plaintiff,

v.

Case number 11-15602
Honorable Julian Abele Cook, Jr.

RICK SNYDER et al.,

Defendants.

ORDER

In this case, the Plaintiff, the Self-Insurance Institute of America, Inc. ("SIIA"), seeks to obtain a declaration from the Court that the Michigan Health Insurance Claims Assessment Act ("Act"), P.A. 142 of 2011, Mich. Comp. Laws § 550.1731 et seq., (1) is preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., and (2) violates the Supremacy Clause of the United States Constitution. SIIA has also filed a petition to obtain an injunction which, if granted, would preclude the enforcement of the Act. Currently before the Court is the Defendants'[1] motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

[1]The Defendants - all of whom were named in their official capacities only - are Rick Snyder, the Governor of the State of Michigan; R. Kevin Clinton, the Director of the Office of Financial and Insurance Regulation; and Andy Dillon, the Treasurer of the State of Michigan.

The Court has previously granted two motions by the following non-parties for leave to file briefs as amici curiae: (1) the Michigan Health & Hospital Association, the Michigan State Medical Society, the Michigan Osteopathic Association, and the Small Business Association of Michigan ("joint amici") and (2) the Michigan Association of Health Plans ("MAHP"). As explained in more detail in that order, the amici are associations whose members are directly affected by the Act.

I.

The Act imposes an assessment of 1% on the value of all claims paid by every carrier or third party administrator for medical services that are rendered in Michigan to a resident of Michigan. Act § 3(1), Mich. Comp. Laws § 550.1733(1). The proceeds from these assessments will be used to finance Michigan's portion of Medicaid program expenditures.[2] As defined in the Act, the word "carrier" includes, *inter alia*, certain "group health plan sponsor[s]." Act § 2(a)(v), Mich. Comp. Laws § 550.1732(a)(v). A "group health plan," in turn, is defined as "an employee welfare benefit plan as defined in [ERISA], to the extent that the plan provides medical care, including items and services paid for as medical care to employees or their dependents as defined under the terms of the plan directly or through insurance, reimbursement, or otherwise." Act § 2(h), Mich. Comp. Laws § 550.1732(h). SIIA contends that, as it applies to self-funded ERISA plans, the Act is preempted by ERISA.

II.

---

[2]The Act was enacted in response to concerns that had been expressed by the Centers for Medicare & Medicaid Services that the previous funding mechanism - namely, a 6% tax on Medicaid managed-care organizations - was invalid, thus potentially jeopardizing federal reimbursements for Medicaid expenditures.

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts the plaintiff's well-pleaded allegations as true and construes each of them in a light that is most favorable to it. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). However, this assumption of truth does not extend to the plaintiff's legal conclusions because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation and internal quotation marks omitted).

In order to survive an application for dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, the "plaintiff [must] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In essence, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In considering a 12(b)(6) motion, "documents attached to the pleadings become part of the pleading and may be considered." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th

Cir. 2001) (emphasis omitted)). Moreover, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997); *see also Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Supplemental documents attached to the motion to dismiss do not convert the pleading into one for summary judgment where the documents do not "rebut, challenge, or contradict anything in the plaintiff's complaint." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993) (citing *Watters v. Pelican Int'l, Inc.*, 706 F. Supp. 1452, 1457 n.1 (D. Colo. 1989)).

III.

## A. <u>Jurisdiction and Associational Standing</u>

The SIIA has invoked the federal question jurisdiction of this Court, 28 U.S.C. § 1331, pointing to the Supremacy Clause of the United States Constitution and § 502 of ERISA, 29 U.S.C. § 1132(a) ("A civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan . . . ."). The action is also brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, which grants authority to the federal courts to "declare the rights and other legal relations of any interested party seeking such declaration" so long as there exists "a case of actual controversy within [the federal courts'] jurisdiction."

There is a split among the circuit courts with respect to whether the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341 ("The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."), nevertheless bars federal court review of

ERISA-based challenges to state tax laws. *Compare Hattem v. Schwarzenegger*, 449 F.3d 423 (2d Cir. 2006) (TIA does not bar federal court review of claim that state tax law is preempted by ERISA because exclusive federal jurisdiction provision of ERISA means that there is no "plain, speedy and efficient" remedy in state court), *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376 (6th Cir. 1993) (same), *and E-Sys., Inc. v. Pogue*, 929 F.2d 1100 (5th Cir. 1991) (same), *with Darne v. Wis. Dep't of Rev.*, 137 F.3d 484 (7th Cir. 1998) (TIA bars claim because state tax practice provides "plain, speedy and efficient" remedy), *and Chase Manhattan Bank, N.A. v. City & Cnty. of San Francisco*, 121 F.3d 557 (9th Cir. 1997) (TIA precludes claim because ERISA's grant of exclusive federal jurisdiction not intended to create exception to TIA); *see also De Buono v. NYSA-ILA Med. & Clinical Servs. Fund.*, 520 U.S. 806, 817 (1997) (Scalia, J., dissenting) (noting split among circuits, and expressing "uncertain[ty about] the federal courts' jurisdiction" over ERISA-based challenges to state tax laws). However, because the Sixth Circuit has held that the TIA does not bar federal court review under these circumstances, *Thiokol*, 987 F.2d at 380-81, the Court concludes that - regardless of whether the Act is a tax or an insurance law, *see infra* Section III.B - it is authorized to adjudicate this matter.

SIIA is a trade association that represents companies which sponsor and administer self-funded ERISA welfare plans, including plan sponsors, plan administrators, and third-party administrators. It has commenced this litigation on behalf of its members, who, it claims, are directly and adversely affected by the Act. An "association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the

lawsuit." *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977) (citing *Warth v. Seldin*, 422 U.S. 490 (1975)). When assessing standing, a court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth*, 422 U.S. at 501. Although it is also within the reviewing court's "power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing," *id.*, such a showing does not appear necessary here. The Court is satisfied that the three elements of the associational standing test have been met.

First, SIIA alleges that its "members include employers, plan sponsors, plan administrators and third party administrators who will be assessed and regulated by the Act, including members who function as ERISA fiduciaries with respect to the processing and payment of medical claims." (Compl. ¶ 20). The fiduciary-members would be empowered to initiate this civil action "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." 29 U.S.C. ¶ 1132(a)(3)(A). Moreover, the employers, sponsors, and administrators will be affected by the Act insofar as they will be required to pay the claims assessment and undertake the associated administrative burdens. (Compl. ¶¶ 17-19). This lawsuit was initiated only ten days before the effective date of the Act, so the alleged injury was sufficiently imminent at the time of filing. *See Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("[O]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." (citation and internal quotation marks omitted)). SIIA has properly alleged that the Act would cause its members to suffer a cognizable injury, and that the relief it seeks would redress that injury,

within the meaning of *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Thus, the members of SIIA would have standing to sue in their own right. *See also Self-Ins. Inst. of Am., Inc. v. Korioth*, 993 F.2d 479 (5th Cir. 1993) (SIIA had prudential standing to challenge Texas law imposing tax on contract administrators on behalf of its members, because (1) at least some members were fiduciaries, and (2) all members (a) would be affected by the law, and (b) provide services to ERISA plans and were therefore within ERISA's zone of interest (citing *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1975))); *Self-Ins. Inst. of Am., Inc. v. Gallagher*, No. TCA 86 7308 WS, 1989 WL 143288, at *7 (N.D. Fla. June 2, 1989) (SIIA had standing to challenge Florida statutes governing its members' business activities because "SIIA employer/plan sponsors and contract administrators, by those activities with respect to self-funded ERISA employee benefit plans, are clearly subjected to the regulatory effects of the challenged Florida statutes").

The second and third prongs of the *Warth* test are plainly satisfied. The SIIA's organizational purpose is to represent the interests of companies that sponsor and administer self-funded ERISA plans - interests that are implicated by the challenged Act. Finally, because the claim asserted and relief requested would affect the membership as a whole, the members' individual participation is not necessary. Therefore, because all three elements of the *Warth* test for associational standing are satisfied, SIIA may properly represent its members in this litigation.

**B. <u>Parties' and Amici's Arguments</u>**

SIIA argues that the Act - as it applies to its members - is preempted under ERISA § 514(a) because it relates to an ERISA plan. *See* ERISA 514(a), 29 U.S.C. § 1144(a) (ERISA

"shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA). It advances two main arguments in favor of a finding of preemption. First, the Act refers to ERISA and ERISA plans in its text. Second, the Act has an impermissible connection with an ERISA plan because it interferes with the uniform nationwide administration of ERISA plans and it imposes impermissible burdens and fees on those plans.

The Defendants argue that the Act does not fall within the scope of ERISA preemption because it is a generally applicable tax that has only an indirect economic influence on any ERISA plan's choices; it does not bind plan administrators to any particular choice about plan benefits, structure, or administration or otherwise preclude uniform administration of the plan. In the alternative, it argues that, if the Act is preempted by ERISA § 514(a), it is saved by ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A), as a law that regulates insurance.

Amicus MAHP adopts the Defendants' arguments as outlined above, and advances, as an independent reason to dismiss the complaint, the argument that state laws which further the objectives of federal laws - here, the Medicaid Act - are not preempted by ERISA. *See* ERISA § 514(d), 29 U.S.C. § 1144(d) ("Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law."); *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 105 (1983). The joint amici adopt and amplify the Defendants' argument that the Act does not "relate to" ERISA plans, and thus does not fall within the preemptive scope of § 514(a).

**C. <u>The Act Does Not "Relate to" ERISA Plans</u>**

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit

plans. To this end, ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citations and internal quotation marks omitted). The preemption provision provides that ERISA "supersedes any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. 29 U.S.C. § 1144(a).

The Supreme Court has held that a state law will "relate to" an ERISA plan if it makes reference to or has a connection with the plan. *Shaw*, 463 U.S. at 96-97. Although earlier cases operated from the premise that "relate to" should be construed in extremely broad terms, in 1995, the Supreme Court noted that, "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for [r]eally, universally, relations stop nowhere." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) (citation and internal quotation marks omitted); *see also Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005) ["*PONI*"] (describing evolution of doctrine). But such a result would be inconsistent with the general starting presumption against preemption and the clear Congressional intent that the words "insofar as they . . . relate" impose at least some degree of limitation on the scope of the preemption provision. *Travelers*, 514 U.S. at 655; *see also De Buono*, 520 U.S. at 814 n.8 ("Where federal law is said to bar state action in fields of traditional state regulation . . . we have worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (citations and internal quotation marks omitted); *id.* at 814 ("[T]he

historic police powers of the State include the regulation of matters of health and safety."); *Thiokol Corp. v. Roberts*, 76 F.3d 751, 755 (6th Cir. 1996) ("Although . . . a state law's status as a tax is not dispositive on the issue of whether the law escapes pre-emption, we are mindful that federal courts must give due respect to the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism,' particularly in the area of state taxation." (citations and internal quotation marks omitted)).

In *Travelers*, after noting that the text of the ERISA preemption provision failed to offer much guidance as to the outer limits of its preemptive scope, the Supreme Court held that courts "simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." 514 U.S. at 656; *see also De Buono*, 520 U.S. at 813-14. The ERISA preemption provision was intended "'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . . , [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.'" *Travelers*, 514 U.S. at 656-67 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)). Thus, the "basic thrust of the pre-emption clause . . . was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Id.* at 657; *see also PONI*, 399 F.3d at 698 ("The purpose of ERISA preemption was to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans. Thus, ERISA preempts state laws that (1) mandate

employee benefit structures or their administration; (2) provide alternate enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." (citation and internal quotation marks omitted)). This uniform regime "provides a set of standard procedures to guide processing of claims and disbursement of benefits." *Eglehoff v. Eglehoff*, 532 U.S. 141, 148 (2001) (citation and internal quotation marks omitted). However, "Congress did not intend . . . for ERISA to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries." *PONI*, 399 F.3d at 698 (citation and internal quotation marks omitted).

SIIA's analysis largely depends upon cases that (1) predate *Travelers* and apply the since-rejected expansive understanding of "relate to" and/or (2) address state laws that mandated particular benefit structures. The Defendants, on the other hand, rely primarily on cases that are factually distinguishable, insofar as the taxes and assessments challenged in those cases were levied against providers, and were thus only indirectly passed on to the ERISA plans. However, in light of the holding by the Supreme Court that "the supposed difference between direct and indirect impact . . . cannot withstand scrutiny," *De Buono*, 520 U.S. at 816, it appears that the direct/indirect distinction is a distinction without a difference.

In *De Buono*, the plaintiff challenged a state tax that applied to all health care facilities - including those facilities that were directly owned and operated by ERISA plans. The Court held that the law was simply "one of myriad state laws of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not 'relate to' them within the

meaning of the governing statute." *Id.* at 815 (citation and internal quotation marks omitted). The challenged tax was levied against hospitals, and the plaintiff fund could have opted to purchase hospital services at independent hospitals rather than operating its own. The Court noted that, in the former case, the tax would have an indirect impact on the fund and, in the latter case, the tax would have a direct impact, but determined that, regardless of whether the tax was assessed directly or indirectly, "[a]ny state tax, or other law, that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is pre-empted by the federal statute." *Id.* at 816. By analogy, it would appear that the fact that the claims tax at issue here is imposed at the point of claim payment - and thus affects insurers and ERISA plans directly, as opposed to being imposed at the point of care - thus affecting insurers and ERISA plans indirectly, does not mean that it has an impermissible effect on ERISA plans. By analogy to *De Buono*, ERISA plans can choose to purchase insurance coverage for their beneficiaries' medical services, or, as the SIIA members have chosen, to self-insure.

In *Thiokol*, the Sixth Circuit stated that the "reference to" and "connection with" prongs "are not analytically distinct; rather, they are two related methods of determining the fundamental question in ERISA analysis: whether the state law has an impermissible effect on a covered plan." 76 F.3d at 758. However, the Supreme Court and subsequent Sixth Circuit opinions have treated the two prongs separately. *E.g.*, *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324 (1997); *Associated Builders & Contractors v. Mich. Dep't of Labor & Econ. Growth*, 543 F.3d 275 (6th Cir. 2008). Thus, the Court will now examine each prong in turn.

SIIA at times appears to argue that the fact that the Act "repeatedly references ERISA plans" (Pl.'s Resp. to Defs.' Mot. to Dismiss at 10) is, standing alone, sufficient to mandate a finding of preemption under the "reference to" prong of preemption analysis.[3] However, the Supreme Court has retreated from its earlier approach premised on such "uncritical literalism," *Travelers*, 514 U.S. at 656, and this argument has been expressly rejected by the Sixth Circuit. In *Thiokol*, 76 F.3d at 759, for example, the Sixth Circuit held that, regardless of whether the challenged law "referred to" an ERISA plan, it would only be preempted if it had an impermissible, burdensome effect on that plan. "[S]ome statutes that refer to covered plans do not have an effect on covered plans, and others have only a tenuous, remote, or peripheral effect. Both of these types of state laws fall outside the scope of ERISA pre-emption. Other statutes do not refer to ERISA but nonetheless have an effect on a covered plan; these are pre-empted because they have more than a tenuous, remote, or peripheral effect." *Id.* at 759. Thus, the relevant inquiry is the nature of the effect, if any, that the law has on ERISA plans. *See Associated Builders*, 543 F.3d 275 (challenged rules did not "refer to" ERISA plan because they "do not 'act[ ] immediately and exclusively upon ERISA plans' and thus do not depend on 'the existence of ERISA plans [for their] . . . operation'" (quoting *Dillingham*, 519 U.S. at 325); *Ky. Ass'n of Health Plans, Inc. v. Nichols*, 227 F.3d 352, 360 (6th Cir. 2000), *aff'd sub nom. Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003) ("While a mere reference to an ERISA plan, without more, may not be enough to cause preemption, Supreme Court precedent shows that if such a reference is combined with some effect on those plans, such as singling them out

[3]However, elsewhere in its briefing and during oral argument, SIIA conceded that a reference to ERISA, without any showing of an effect on an ERISA plan, is insufficient to trigger preemption.

for different treatment, preemption will result.”).

The Act does not act exclusively on ERISA plans or single them out for different treatment, but rather treats them the same as other entities that make “actual payments, net of recoveries . . . , to a health and medical services provider . . . .” Act § 2(s), Mich. Comp. Laws § 550.1732(s) (defining “paid claims”); *see also* Act § 3(1) (levying tax on any carrier or third-party administrator for all paid claims); Act § 2(a), Mich. Comp. Laws § 550.1732(a) (defining “carrier” to include, *inter alia*, commercial insurers and health maintenance organizations, nonprofit health care corporations, speciality prepaid health plans, and ERISA plans). Although SIIA suggests that the Act specifically targets ERISA plans, it is clear that the Act is aimed not at ERISA plans per se, but rather at a broad array of entities - including ERISA plans - that pay claims on behalf of a Michigan resident for medical services provided in Michigan. Thus, while the Act would surely bring in less revenue if self-insured ERISA plans were exempted, it does not depend on the existence of these plans for its operation. *See Dillingham*, 519 U.S. 327-28 (state prevailing wage statute did not “refer to” ERISA plan where statute treated all apprenticeship programs - irrespective of whether they were ERISA-funded or not - alike and thus “function[ed] irrespective of . . . the existence of an ERISA plan”); *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 838 n.12 (1988) (“*[A]ny* state law which singles out ERISA plans, by express reference, *for special treatment* is pre-empted. It is this ‘singling out’ that pre-empts the [state statute exempting ERISA welfare benefit plans from general garnishment statute].” (second emphasis added)). Indeed, elsewhere in its briefing, SIIA highlights the breadth of the entities that fall within Act’s reach. (*See* Pl.’s Resp. Br. at 3 (claims tax applies to “‘**every** carrier and third party administrator’ which pays a ‘claim’ on behalf of a

Michigan resident for services provided to that resident in Michigan" (emphasis in original) (footnote omitted); *id.* at 4 ("The Act applies to 'any entity' wherever located which processes claims for services rendered to a Michigan resident in Michigan.")).

Thus, even though the Act "refers to" ERISA plans in the "uncritical[ly] literal[]" sense, *Travelers*, 514 U.S. at 656, it does not have the sort of impermissible "reference to plus effect on" ERISA plans that ERISA preemption analysis forbids. Therefore, the Court concludes that the Act does not "refer to" an ERISA plan within the meaning of preemption doctrine.

SIIA also argues that the Act has an impermissible "connection with" ERISA plans, insofar as it imposes certain administrative burdens that, it contends, conflict with the burdens imposed by ERISA and undermine ERISA's interest in uniform administration of benefits plans. The Defendants and joint amici vigorously dispute this claim, arguing that any additional administrative burdens, beyond those already mandated by ERISA, are minimal. SIIA, pointing to the standard of review that applies to a motion to dismiss under Rule 12(b)(6), contends that the Court must, for present purposes, accept as true its well-pleaded factual allegations and cannot consider its adversaries' contrary factual allegations. To the extent that they have offered factual - as opposed to legal - allegations that (1) are not properly subject to judicial notice and (2) contradict those actually pleaded in the complaint, the Court agrees. However, as will be seen, even accepting SIIA's factual assertions as true, the Act does not have an impermissible "connection with" ERISA plans.

The Sixth Circuit, after examining the history of Supreme Court preemption cases, determined that the "'connection with' inquiry . . . requires two showings to preempt a state law: (1) the law at issue must mandate (or effectively mandate) something, and (2) that mandate must

fall within the area that Congress intended ERISA to control exclusively." *Associated Builders*, 543 F.3d at 280-81. It is obvious that the claims tax mandates something - to wit, the payment of a 1% tax on all paid claims. With respect to the second prong, the court noted that the "key distinction is between a statute that mandates or effectively mandates an aspect of law with which ERISA is concerned - i.e., a statute that mandates employee benefit structures or their administration - and a statute that does not." *Id.* at 280 (citations and internal quotation marks omitted); *see also Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146-47 (2d Cir. 1989) ("What triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit.").

The Act does not mandate any particular benefit structure or bind administrators to certain benefits choices. *See PONI*, 399 F.3d at 698. Elsewhere in its briefing, SIIA appears to concede as much. (S*ee* Pl.'s Resp. Br. at 19 (contrasting Act with "statutes which mandate benefits or directly regulate the scope of permissible bargains between insurers and insureds")). Thus, the claims tax is not like the statute found preempted in *Eglehoff*, which provided for the automatic revocation of a plan participants's designation of a spouse as a beneficiary in the event that the participant and beneficiary-spouse divorced. 532 U.S. 141. Because the challenged "statute governs the payment of benefits, a central matter of plan administration," it was preempted by ERISA. *Id.* at 148; *see also District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125 (1992) (law required employers who provide health insurance to provide equivalent coverage for injured employees eligible for workers' compensation); *FMC Corp. v. Holliday*, 498 U.S. 52, 60 (1990) (statute prohibited "plans from being structured in a manner

requiring reimbursement [from a beneficiary] in the event of recovery from a third party"); *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985) (law required benefit plans to include certain mental health benefits); *Shaw*, 463 U.S. 85 (law required plans to include pregnancy benefits); *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504 (1981) (statute eliminated particular method of calculating pension benefits that was permitted under federal law); *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 193 (4th Cir. 2007) (challenged law "effectively mandate[d] that employers structure their employee healthcare plans to provide a certain level of benefits").

In contrast, courts have found that laws that do not mandate particular structures for or decisions about the "processing of claims and disbursement of benefits," *Eglehoff*, 532 U.S. at 148, are not preempted, even if they may "impose some burdens on the administration of ERISA plans . . . [or] increase[ ] the cost of providing benefits to covered employees," *De Buono*, 519 U.S. at 816-17. Thus, in *Mackey*, the Supreme Court held that a state's general garnishment procedures were not preempted as they applied to ERISA plans even though they imposed substantial administrative burdens on ERISA plans and trustees.[4] 486 U.S. at 831-32. Indeed, a separate provision of the garnishment statute which expressly exempted ERISA plans from having to bear those administrative burdens was found preempted under the "refers to" prong

---

[4]According to the plan trustees, "when an employee welfare benefit plan is garnished under Georgia law by a creditor of a participant, plan trustees are served with a garnishment summons, become parties to a suit, and must respond and deposit the demanded funds due the beneficiary-debtor - funds that otherwise they are required to hold and pay out to those beneficiaries. At the very least, petitioners contend, benefit plans subjected to garnishment will incur substantial administrative burdens and costs." *Mackey*, 486 U.S. at 831. The Court nevertheless rejected their claim that, "[b]ecause garnishment will involve and affect the plan and its trustees in these ways . . . , the Georgia garnishment law necessarily 'relates to' such ERISA welfare benefit plans and is therefore pre-empted by § 514(a)." *Id.*

because it singled out ERISA plans for differential - even if preferential - treatment. *Id.* at 829-30. In *Mackey*, the Supreme Court noted that a general tax assessed on hospitals was not preempted as it applied to hospitals owned and operated by ERISA plans because it was "one of myriad state laws of general applicability that impose some burdens on the administration of ERISA plans but nevertheless do not 'relate to' them within the meaning of the governing statute." 520 U.S. at 815 (citation and internal quotation marks omitted). The Court noted that "there might be a state law whose economic effects, intentionally or otherwise, were so acute as to force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers and such a state law might indeed be pre-empted under § 514," but determined that the general tax on hospitals was not such a law. *Id.* at 806 and n.16 (citation and internal quotation marks omitted).

Indeed, here, the claims tax is implicated and assessed only *after* a coverage decision has been made and a claim has been paid. *See Union Sec. Ins. Co. v. Alexander*, No. 11-10858, 2011 WL 5199918, at *5 (E.D. Mich. Nov. 2, 2011) ("Once the administrator processes the claim and disburses the benefits, however, the federal interest in administrative uniformity is achieved."). Thus, even assuming the Act results in some lack of uniformity in post-benefit-decision plan administration, this effect is unrelated to ERISA's concern of establishing "standard procedures to guide processing of claims and disbursement of benefits." *Eglehoff*, 532 U.S. at 148.

For these reasons, the Court concludes that the Act does not have an impermissible "connection with" an ERISA plan. Because the Court has already concluded that the Act does not impermissibly "refer to" an ERISA plan, it does not "relate to" ERISA under either prong of

the preemption analysis and is therefore not preempted under § 514(a).[5]

## D. The "Deemer Clause" Is Not Implicated Where the Act Does Not "Relate to" ERISA Plans

The Court notes that SIIA also argues that the Act runs afoul of ERISA's "deemer clause," which, in relevant part, prohibits any state law from deeming an ERISA plan to be an insurer. *See* ERISA § 514(b)(2), 29 U.S.C. § 1144(b)(2). However, the deemer clause has no place in the initial determination of whether a state law "relates to" an ERISA plan. On the contrary, this clause only comes into effect to prevent an otherwise preempted law from being "saved" as a law that regulates insurance. Here, where the Court has already determined that the Act does not impermissibly "relate to" an ERISA plan, the deemer clause is not triggered. The same, of course, is true of the Defendants' argument in the alternative that the Act is saved by the "saving clause" as a law regulating insurance, ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A).[6]

IV.

For the reasons that have been set forth above, the Defendants' motion to dismiss (ECF 14) is granted.

IT IS SO ORDERED.

---

[5]For these same reasons, the Court rejects SIIA's argument that the Act violates the Supremacy Clause.

[6]In light of the Court's disposition of this matter, it need not consider the alternative - and broader - argument advanced by amicus MAHP that the Act is not preempted because it furthers the objectives of the Medicaid Act.

Date: August 31, 2012

s/Julian Abele Cook, Jr.
JULIAN ABELE COOK, JR.
U.S. District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 31, 2012.

s/ Kay Doaks
Case Manager